1   Richard D. McCune
    David C. Wright
2   **McCune Wright Arevalo llp**
    3281 Guasti Road, Suite 100
3   Ontario, California 91761
    Telephone: (909) 557-1250
4   Facsimile: (909) 557-1275
    Email: rdm@mccunewright.com
5   dcw@mccunewright.com

6   Joseph G. Sauder
    Matthew D. Schelkopf*
7   Joseph B. Kenney
    **McCune Wright Arevalo llp**
8   555 Lancaster Avenue
    Berwyn, Pennsylvania 19312
9   Telephone: (909) 557-1250
    Email: jgs@mccunewright.com
10  mds@mccunewright.com
    jbk@mccunewright.com

11
    Attorneys for Plaintiff and the Putative Class
12  *Pro Hac Vice Applications to be submitted*

13  [Additional counsel on signature page]

14

15              **UNITED STATES DISTRICT COURT**

16         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

17  TRAVIS SWANK, on behalf of themselves )   Case No.:
    and all others similarly situated,            )
18                                                )
                                                  )
19              Plaintiff,                        )   **CLASS ACTION COMPLAINT**
         v.                                       )
20                                                )   1.  Violation of the California Consumer Legal
    PORSCHE CARS NORTH AMERICA,                   )       Remedies Act (Civ. Code § 1750, *et seq.*);
    INC.,                                         )   2.  Violation of California Unfair Competition
21                                                )       Laws (Bus. & Prof. Code § 17200);
                                                  )   3.  Violation of California False Advertising
22              Defendant.                        )       Law (Bus. & Prof. Code § 17500, *et seq.*);
                                                  )   4.  Breach of Implied Warranty;
23                                                )   5.  Breach of Written Warranty under the
                                                  )       Magnuson-Moss Warranty Act (15 U.S.C.
24                                                )       § 2301, *et seq.*);
                                                  )   6.  Common Law Fraud; and
25                                                )   7.  Unjust Enrichment
                                                  )
26                                                )   **DEMAND FOR JURY TRIAL**
                                                  )
27  _____ )

28

                              -1-

Class Action Complaint
Case No.:

Plaintiff Travis Swank brings this action against Porsche Cars North America, Inc. ("Defendant"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## I.    **INTRODUCTION**

1.     This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former Porsche vehicle owners and lessees with defective camshaft adjuster bolts utilized in numerous Porsche vehicles sold in the United States, including but not limited to: Cayenne S (MY 2011), Cayenne Turbo (MY 2011), Panamera (MYs 2011 and 2012), Panamera 4 (MYs 2011 and 2012), Panamera 4S (MYs 2010, 2011, and 2012), Panamera S (MYs 2010, 2011, and 2012), and Panamera Turbo (MYs 2010, 2011, and 2012) (collectively, the "Class Vehicles").[1]

2.     This action arises from Defendant's failure, despite its longstanding knowledge of a material defect, to disclose to Plaintiff and other consumers that the Class Vehicles' camshaft adjuster bolts are defective and can potentially result in catastrophic engine failure (the "Camshaft Defect"), and to provide fair and equitable redress to these consumers.

3.     The Camshaft Defect can cause engine failure while the Class Vehicles are in operation at any time and under any driving condition or speed. This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced engine damage and catastrophic failure while operating a Class Vehicle, thus placing themselves and those around them in immediate danger.

4.     Not only did Defendant actively conceal the fact that particular components within the Class Vehicles' engines are defective, it failed to reveal that the existence of the defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described herein.

5.     Defendant has long been aware of the Camshaft Defect and many owners and lessees of the Class Vehicles have communicated with Defendant or its agents to request that it remedy and/or

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

1  address the Camshaft Defect. Yet, notwithstanding its longstanding knowledge of this defect and such

2  requests, Defendant has routinely refused to repair the Class Vehicles without charge.

3      6.      As a result of Defendant's unfair, deceptive, and/or fraudulent business practices,

4  owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of

5  money and/or property and/or loss in value.

6      7.      Had Plaintiff and other Class members known about the Camshaft Defect at the time of

7  purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid

8  substantially less for them.

9      8.      As a result of the Camshaft Defect and the monetary costs associated with attempting to

10  repair such defect, Plaintiff and the Class members have suffered injury in fact, incurred damages, and

11  have otherwise been harmed by Defendant's conduct.

12      9.      Accordingly, Plaintiff brings this action to redress Defendant's violations of California's

13  consumer fraud statutes and the Magnuson-Moss Warranty Act, and to also seek recovery for

14  Defendant's breach of implied warranty, and common law fraud.

15                    **II.    JURISDICTION AND VENUE**

16      10.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d)

17  of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is

18  an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii)

19  there is minimal diversity because at least one Plaintiff and one Defendant are citizens of different

20  States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21      11.      This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the

22  Court's jurisdiction. This Court has personal jurisdiction over Defendant because it has been present by

23  conducting and continuing to conduct substantial business in this federal judicial District, and because

24  it has committed many of the acts and omissions complained of herein in the District. As such,

25  Defendant is subject to personal jurisdiction in this District.

26      12.      Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391

27  because Defendant has one or more authorized Porsche dealers within this district, has advertised in

28  this district, and has received substantial revenue and profits from its sales and/or leasing of Class

Class Action Complaint
Case No.:

Vehicles in this district, including to Plaintiff Swank and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

### III.    PARTIES

#### A.    Plaintiff

13.    Plaintiff Travis Swank is a resident and citizen of California, and currently resides in Wheatland, California.

14.    In or around May 2014, Plaintiff purchased a pre-owned 2011 Porsche Cayenne with approximately 32,600 miles on the odometer (VIN: WP1AB2A29BLA45433).

15.    On or about March 29, 2017, with approximately 86,000 miles on the odometer, Plaintiff was driving when his engine failed. Plaintiff brought his vehicle to Niello Porsche, an authorized dealer and service center located in Rocklin, California. Niello Porsche confirmed that camshaft bolt had failed and that he would require a new engine that would cost approximately $25,000 to $30,000.

16.    In lieu of replacing the entire engine, Plaintiff elected to fix the damaged components himself. Plaintiff purchased the necessary parts from Niello Porsche for $1,841.66 and when all purchases for the repair were accounted for, the cost was over $2,000. The repair took Plaintiff more than 60 hours to complete – time which he was not reimbursed for.

17.    Plaintiff Swank has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the engine defect, including, but not limited to, out of pocket losses associated with the Camshaft Defect, diminished value of his vehicle, and other consequential damages.

18.    Neither Defendant, nor any of their agents, dealers, or other representatives informed Plaintiff Swank of the existence of the Camshaft Defect prior to, or any time after, his purchase.

#### B.    Defendant

19.    Defendant Porsche Cars North America, Inc., is a corporation which is incorporated under the laws of Delaware, with its principal place of business located at One Porsche Drive, Atlanta, Georgia.

20. Defendant is a wholly-owned subsidiary of Dr. Ing. h.c. F. Porsche AG, which is headquartered in Stuttgart, Germany.

## IV.  TOLLING OF STATUTES OF LIMITATIONS

21. Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Camshaft Defect until shortly before this class action litigation was commenced.

22. Defendant was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality and nature of the Class Vehicles, that the Camshaft Defect is based on the use of defective materials, that it will require costly repairs, that it poses a safety concern, and that it diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## V.  FACTUAL ALLEGATIONS

### A.  The Camshaft Defect within the Class Vehicles

23. Between 2010 and 2012, Defendant designed and manufactured, *inter alia,* the following Class Vehicles:  Cayenne S (MY 2011), Cayenne Turbo (MY 2011), Panamera (MY 2011 and 2012), Panamera 4 (MYs 2011 and 2012), Panamera 4S (MY 2010, 2011, and 2012), Panamera S (MY 2010, 2011, and 2012), and Panamera Turbo (MY 2010, 2011, and 2012).

24. All Class Vehicles include camshafts, which control the opening and closing of the intake and exhaust valves and are driven by a timing chain. A diagram depicting a camshaft and its function within the engine is below:

//

//

//

//

//

//

Class Action Complaint
Case No.:



Camshaft Controller
Adjuster Bolt
Camshaft
Cam
Valve Spring
Valve
Cylinder
Piston
Crankshaft
Timing Chain/Belt
Connecting Rod

25.     A camshaft acts as a timing device that controls the opening and closing of the intake and exhaust valves. The camshaft contains cams that are egg-shaped lobes that actuate the valvetrain, either by moving lifters and pushrods, or by pushing directly on the valve stems. The camshaft is secured to a controller by an adjuster bolt and is bound to crankshaft rotation by a timing chain. If the adjuster bolt fails, then the controller is no longer secured to the camshaft drive and because the engine is "out-of-time" the valves can contact the piston crowns, causing extensive internal engine damage.

26.     Camshaft adjuster bolts are designed to function for periods (and mileages) substantially in excess of those specified in Defendant's warranties, and given past experience, consumers reasonably expect to enjoy the use of an automobile without worry that the camshaft adjuster bolts, and thus the engine, will catastrophically fail for significantly longer than the limited times and mileages identified in Defendant's warranties.

27.     Automobiles must incorporate materials that are able to withstand foreseeable usage conditions such as the operation of the vehicle without the failure of the camshaft adjuster bolts. A vehicle can suffer catastrophic damage and costly repairs from customary environmental and usage conditions when an insufficient vehicle design is implemented.

28.     The Class Vehicles were manufactured with defective camshaft adjuster bolts. This defect renders the Class Vehicles prone to the Camshaft Defect and in some instances to catastrophic engine failure. The Camshaft Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

29.     In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Camshaft Defect, repair and replacement of the engine, despite such defect having been contained in the Class Vehicles when manufactured by Defendant.

30.     Upon information and belief, Defendant, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) camshaft adjuster bolt failure in prior model years, (6) pre-sale durability testing, and (7) other various sources, was well aware of the Camshaft Defect but failed to notify consumers of the nature and extent of the problems with the Class Vehicles' engines or provide any adequate remedy.

31.     Defendant failed to adequately research, design, test, and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

32.     Porsche is experienced in the design and manufacture of consumer vehicles. As N experienced manufacturer, Porsche conducts tests, including pre-sale durability testing, on incoming components, including the camshaft adjuster bolts, to verify the parts are free from defect and align with Porsche's specifications.[2] Thus, Porsche knew or should have known the camshaft adjuster bolts

---

[2] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed August 31, 2017).

Class Action Complaint
Case No.:

1  were defective and prone to put drivers in a dangerous position as a result of the inherent risk of the

2  Camshaft Defect.

3      33.    Additionally, Defendant should have learned of this widespread defect from the sheer

4  number of reports received from dealerships. Defendant's customer relations department, which

5  interacts with individual dealerships to identify potential common defects, has received numerous

6  reports regarding the Camshaft Defect, which led to the release of the technical service bulletin

7  ("TSB") and recall. Porsche's customer relations department also collects and analyzes field data

8  including, but not limited to, repair requests made at dealerships, technical reports prepared by

9  engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales

10  reports, and warranty claims data.

11      34.    Defendant's warranty department similarly analyzes and collects data submitted by its

12  dealerships in order to identify trends in its vehicles. It is Defendant's policy that when a repair is made

13  under warranty, the dealership must provide Porsche with detailed documentation of the problem and

14  the fix employed to correct it. Dealerships have an incentive to provide detailed information to

15  Defendant because they will not be reimbursed for any repairs unless the justification is sufficiently

16  detailed.

17      35.    Defendant expressly warranted that the Class Vehicles' engines would be free from

18  defects for a period of four years or 50,000 miles, whichever occurs first.

19      36.    Buyers, lessees, and other owners of the Class Vehicles were without access to the

20  information concealed by Defendant as described herein, and therefore reasonably relied on

21  Defendant's representations and warranties regarding the quality, durability, and other material

22  characteristics of their vehicles. Had these buyers and lessees known of the defect and the potential

23  danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles

24  than the amounts they actually paid, or would not have purchased the vehicles.

25      37.    Porsche has alleged that in 2012, it began receiving information about field incidents in

26  certain Cayenne and Panamera vehicles, in which the affected vehicles exhibited noticeable engine

27

28

Class Action Complaint
Case No.:

noise and vibration, as well as an activated "check engine" warning lamp, presumably caused by the Camshaft Defect.[3]

38.     On or about December 18, 2012, Defendant published a voluntary worldwide workshop campaign, which was published in the United States on December 18, 2012.

39.     On or about March 11, 2013, Defendant issued a service Workshop Campaign, "WC22 - Replacing Camshaft Controller," for the 2011 Cayenne S and Cayenne Turbo models, indicating that: "Due to a temporary screw connection assembly problem, existing threaded connections on the camshaft controller can become strained to such an extent that the function of the camshaft controller cannot be guaranteed over the service life of the vehicle."

40.     On or about April 30, 2013, Dr. Ing. h.c. F. Porsche AG, Defendant's parent company, issued a Pollution Recall Campaign (Campaign No. Gai -1911) in Japan for nine Porsche vehicle models, including many which are Class Vehicles indicating the same problem is identified in WC-22: "Due to a temporary screw connection assembly problem, existing threaded connections on the camshaft controller can become strained to such an extent that the function of the camshaft controller cannot be guaranteed over the service life of the vehicle."[4]

41.     In or about February 2015, Porsche China recalled more than 14,000 vehicles in China, including some Panamera (2009 – 2011) and Cayenne (2010 – 2011) models, due to defective camshaft adjusters which could loosen or break, and indicated that it would replace the defective components for free for Chinese consumers.

42.     Porsche China is a subsidiary of Dr. Ing. h.c. F. Porsche AG, Defendant's parent company.

43.     In the United States, there have been at least 25 official complaints to NHTSA regarding the quality of the camshaft adjuster bolts since 2015 as described in further detail at Section V.B. herein (Factual Allegations, Complaints by Other Class members).

44.     On or about June 7, 2017, – several years after it first became aware of the Camshaft Defect -- Porsche issued a recall notice (NHTSA No. 17V368000; Porsche No. AH08), for

---

[3] https://static.nhtsa.gov/odi/rcl/2017/RMISC-17V368-7437.pdf  (last visited August 9, 2017).
[4] http://www.mlit.go.jp/common/000997761.pdf (last visited Aug. 9, 2017).

Class Action Complaint
Case No.:

the following Porsche vehicles, all due to engine stalling while driving: MY 2010-2012 Panamera S, Panamera 4S and Panamera Turbo vehicles, MY 2011-2012 Panamera and Panamera 4 vehicles, and MY 2011 Cayenne S and Cayenne Turbo vehicles.

45.    On or about June 13, 2017, the U.S. Department of Transportation, National Highway Traffic Safety Administration ("NHTSA"), acknowledged Defendant's notification of the Camshaft Defect for the Class Vehicles and assigned it NHTSA Campaign Number: 17V-36.

46.    Among other information, the NHTSA included the following instruction in its June 13, 2017, letter to Defendant: "Please amend your Defect Information report to explain why this recall was filed in June 2017 when recalls for the same failure were initiated in April 2013 for substantially similar vehicles in Japan and during January 2015 for vehicles in China and Korea."

47.    Porsche failed to provide reimbursement for U.S. consumers who had already sustained out-of-pocket expenses caused by the Camshaft Defect as part of its recall campaign.

48.    Accordingly, on June 16, 2017, Plaintiff sent a letter to defendant pursuant to Cal. Civil Code § 1782(a) and Cal. Comm. Code § 2607(3)(A), which advised Defendant that it is in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("CLRA Letter"). *See* CLRA Letter attached as Exhibit 1.

49.    The CLRA letter requested that Defendant immediately implement the following remedies:

- Disseminate a notice reasonably intended to reach all current and former owners and lessees of Class Vehicles, in a form approved by the above counsel, setting forth the camshaft fastener defect and delineating the details of the expanded warranty coverage for repairs.

- Subject to monitoring and confirmation by above counsel, provide to each Class Member:

  - Reimbursement for all expenses already incurred because of the defective camshaft fasteners, including repairs, diagnostics, diminution in value, and consequential costs (towing charges, vehicle rentals, etc.);

  - Free repairs that eliminate the camshaft fastener defect in Class Vehicles; and

  - Provide a warranty of 10 years/100,000 miles for the Class Vehicles related to the camshaft fastener defect identified above.

- Immediately cease selling and leasing Class Vehicles without first notifying purchasers of the camshaft fastener defect, and otherwise immediately cease to engage in the violations of the Consumers Legal Remedies Act and Magnuson-Moss Warranty Act set forth above.

- Pay into a Court-approved escrow account an amount of money sufficient to pay Plaintiff's attorneys' fees and costs.

50.     Upon information and belief, as of June 17, 2017, Defendant's authorized dealerships were still not providing repairs for the Camshaft Defect free of charge.

51.     On June 19, 2017, Defendant contacted Plaintiff's counsel by phone and sent an email enclosing a letter. A copy of Defendant's June 19, 2017, email and letter are attached as Exhibit 2.

52.     When Plaintiff's counsel spoke to Defendant's representative on the telephone later that day, the representative advised that the recall did not currently include reimbursement to Class members who had incurred expenses from the Camshaft Defect prior to the recall notice. Defendant's representative further indicated that he did not know if that would change.

53.     Defendant issued no further response to the CLRA Letter.

54.     On July 31, 2017, Plaintiff received a letter from Defendant about the Camshaft Defect Recall ("Recall Letter"). The Recall Letter, for the first time, disclosed the Camshaft Defect to certain Class members and advised that Defendant would "review your reimbursement request" if Class members "previously paid for repairs relating to the [Camshaft Defect]." A copy of the Recall Letter is attached as Exhibit 3.

55.     Defendant's failure until July 2017 to notify the general public or the owners or lessees of the Class Vehicles of the Camshaft Defect is particularly egregious because, after the Camshaft Defect manifests, owners and lessees of the Class Vehicles may experience catastrophic engine failure, placing the driver and his or her occupants at an increased risk of accident, injury, and death.

56.     Despite Defendant's acknowledgement of the Camshaft Defect in the Class Vehicles during the warranty period for all or nearly all of the Class Vehicles,[5] Defendant had declined to extend goodwill coverage or reimbursement to those owners and lessees of the Class Vehicles who

---

[5] Porsche's Warranty is in effect for four years or 50,000 miles, whichever occurs first.

Class Action Complaint
Case No.:

experienced the Camshaft Defect after Defendant's warranty expired prior to receiving the CLRA Letter.

57.     Further, while Defendant has indicated that it will replace defective camshaft adjuster bolts if failure has not yet occurred, it had refused to provide reimbursement for past expenses until after receiving the CLRA Letter.

58.     Accordingly, Plaintiff's CLRA Letter was a substantial factor and catalyst in forcing Porsche to reimburse Class members for expenses incurred to fix the Camshaft Defect prior to the recall.

59.     Moreover, the recall and belated reimbursement campaign still do not make Class members whole. Specifically, Class members are not provided damages that they have sustained from a vehicle with an inherent safety defect, which diminishes the value of the Class Vehicles. Additionally, Class members who experienced the Camshaft Defect but could not afford to pay for the repair (which could be as much as $30,000) and were forced to sell their Class Vehicle at a significant discount, are also not made whole by the recall campaign.

**B.    Complaints by Other Class members**

60.     Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Camshaft Defect within the Class Vehicles.

61.     Consumer complaints also indicate Defendant's awareness of the defect and its potential danger. Representatives examples of complaints regarding the Class Vehicles are included below, all of which were manufactured by Defendant:

> a. *Vehicle:* 2012 Porsche Cayenne
> *Date Complaint Filed:* 03/02/2017
> *Date of Incident:* 02/22/2017
> *Component(s):* Power Train
> *NHTSA ID Number:* 10958010
> *Consumer Location:*  Louisville, KY
> *Vehicle Identification No. (VIN) (if known):* WP1AC2A22CL….
> *Summary:*  CAMSHAFT ADJUSTER BOLTS FAILED… VEHICLE
> LOST POWER WHILE DRIVING, INCLUDING BRAKING SYSTEM
> AND POWER STEERING. PORSCHE RECALLED SOME 2011S,
> BUT NO 2s012 WERE RECALLED FOR THE SAME PROBLEM. I
> HAVE KEPT THE FAULTY PARTS WHICH MATCH PART
> NUMBER WITH KNOWN DEFECT. PORSCHE WOULD NOT
> HONOR GOODWILL OR ANY DISCOUNT, EVEN WITH PROOF OF
> MATCHING NUMBERS PER THE MANUFACTURER.

b. *Vehicle:* 2011 Porsche Cayenne
*Date Complaint Filed:* 11/28/2016
*Date of Incident:* 11/07/2016
*Component(s):* Engine
*NHTSA ID Number:* 10928336
*Consumer Location:* Aurora, IL
*Vehicle Identification No. (VIN) (if known):* WP1AB2A28BL….
*Summary:* CAMSHAFT ADJUSTER BOLTS SNAPPED WHILE IN
OPERATING MODE. BEING MADE OF ALUMINUM NOT STEEL
AS IN PREVIOUS YEARS CAUSED THE ENGINE TO STOP
OPERATING. PORSCHE USA REFUSED TO COOPERATE CITING
AN OUT OF WARRANTY REASON.VEHICLE ONLY HAD 84000
MILES WHEN THIS FACTORY DEFECT HAS EFFECTED THE
ENGINE.

c. *Vehicle:* 2011 Porsche Cayenne
*Date Complaint Filed:* 08/19/2016
*Date of Incident:* 06/17/2016
*Component(s):* Engine
*NHTSA ID Number:* 10897068
*Consumer Location:* Warren, NJ
*Vehicle Identification No. (VIN) (if known):* WP1AB2A22BL….
*Summary:* THE CAR STOPPED WHILE BEING DRIVEN IN
TRAFFIC ON A BUSY SUBURBAN ROAD. THE CAR WOULD NOT
RESTART. RIGHT BEFORE THE CAR SUDDENLY STOPPED THE
PSM LIGHT CAME ON. THIS WAS THE ONLY THING THAT
OCCURRED PRIOR TO THE SUDDEN STOP. THE CAR WAS
PUSHED OUT OF THE ROAD AND FLAT BEDDED TO PAUL
MILLER PORSCHE IN PARSIPPANY, N.J. THE SERVICE
TECHNICIAN(S) FOUND THAT AT LEAST ONE ALUMINUM
BOLT FROM THE CAM SHAFT ADJUSTER HAD SHEARED OFF
AND FELL THROUGH THE ENGINE CAUSING COMPLETE
ENGINE FAILURE. THE ONLY WAY TO REPAIR THE CAR WAS
TO REPLACE THE ENGINE. THE CAR WAS PURCHASE BRAND
NEW ON JUNE 15, 2011. THE CAR HAD BEEN SPECIAL
ORDERED SEVERAL MONTHS PRIOR TO THE DELIVERY DATE.
AFTER THIS INCIDENT, I RESEARCHED THIS ISSUE. IT
APPEARS THAT PORSCHE CAYENNES AND PANAMERAS
MANUFACTURED DURING THE SAME TIME PERIOD OUR CAR
WAS MADE WERE RECALLED IN CHINA FOR THIS EXACT
SAME ISSUE-ALUMINUM CAMSHAFT ADJUSTER BOLTS
SHEARING OFF INTO THE ENGINE AND CAUSING TOTAL
ENGINE FAILURE. THIS CAR WAS OUT OF THE PORSCHE 4
YEAR/50K WARRANTY PERIOD. I NOTIFIED PORSCHE NORTH
AMERICA OF THIS INCIDENT AND THEY REFUSED TO
REPLACE THE ENGINE. THE CAR WAS COVERED UNDER OUR
GEICO MECHANICAL BREAKDOWN INSURANCE. GEICO SENT
OUT INSPECTORS TO EXAMINE THE CAR AND DEEMED IT A
TOTAL LOSS. WE SURRENDERED THE CAR TO GEICO AND
WERE PAID WHAT THEY DEEMED THE CAR WAS WORTH. THE
LAST TIME WE SAW THE CAR WAS AT PAUL MILLER PORSCHE
IN PARSIPANNY, N.J. ON JULY 26TH WHEN WE EMPTIED IT OF
OUR PERSONAL BELONGINGS. LUCKILY NO ONE WAS HURT
IN THIS INCIDENT. OBVIOUSLY A CAR SUDDENLY STOPPING
WHILE BEING DRIVEN IS HUGE DANGER. HAD THIS

-13-

OCCURRED ON A HIGHWAY OR IN FASTER TRAFFIC THE RESULTS COULD HAVE BEEN CATASTROPHIC.

    d.  *Vehicle:* 2011 Porsche Cayenne
*Date Complaint Filed:* 08/09/2016
*Date of Incident:* 08/09/2016
*Component(s):* Engine
*NHTSA ID Number:* 10894489
*Consumer Location:*  Spring Lake, NJ
*Vehicle Identification No. (VIN) (if known):* WP1AC2A26BL….
*Summary:*  THERE HAVE BEEN INCREASING REPORTS OF VARIOCAM CAMSHAFT DRIVE BOLT FAILURES ON THE 2011 PORSCHE CAYENNE V8 ENGINES. WHEN THESE BOLTS FAIL, ENGINE DAMAGE OCCURS, AND THE ENGINE TYPICALLY STOPS RUNNING. IN THE CASE OF THE TURBO MODEL - THIS CAN ALSO RESULT IN THE LOSS OF BRAKING ABILITY SINCE THE BRAKES ARE POWERED OFF A CAMSHAFT. THERE IS ALSO A LOSS OF POWER STEERING - MEANING YOU HAVE A 4,500LB VEHICLE WITHOUT BRAKES OR STEERING. PORSCHE HAD A LIMITED "WORKSHOP CAMPAIGN" FOR THESE VEHICLES THAT ADDRESSED A CERTAIN RANGE OF VIN# IN THE USA. IT IS WC-22 (I'M ATTACHING A PDF OF IT.) THE FAILURES ARE NOW BEING REPORTED WITH INCREASING FREQUENCY IN VIN#'S NOT COVERED BY THIS WORKSHOP CAMPAIGN. THE CAMPAIGN INVOLVES REPLACING THE VARIOCAM ASSEMBLY WITH ONE ASSEMBLED WITH STEEL BOLTS RATHER THAN ALUMINUM BOLTS. EARLIER VERSIONS OF THIS ASSEMBLY ALSO USED STEEL BOLTS, AND THE FAILURES APPEAR LIMITED TO ONES WHERE THE ALUMINUM BOLTS WERE USED. THE MOST COMPLETE DISCUSSION ON THIS CAN BE FOUND AT: HTTP://WWW.6SPEEDONLINE.COM/FORUMS/CAYENNE/319690-SNAPPED-CAMSHAFT-ADJUSTER-BOLT-ENGINE-BRAKE-HYDRAULICS-FAILURE.HTML THERE ARE OTHER WEBSITES AND DISCUSSIONS ON THE SAME FAILURE. HERE IS AN ARTICLE ON THE RECALL PORSCHE DID IN CHINA FOR THE SAME PROBLEM: HTTP://EUROPE.AUTONEWS.COM/ARTICLE/20150209/ANE/150209861/PORSCHE-WILL-RECALL-SOME-PANAMERA-CAYENNE-MODELS-IN-CHINA. MINE HAS NOT FAILED YET - BUT IT APPEARS TO BE JUST A MATTER OF TIME, MINE HAS THE ALUMINUM BOLTS IN THE ASSEMBLY. I WOULD ASK THAT PORSCHE EXTEND THE WORKSHOP CAMPAIGN TO ALL THE VEHICLES WITH THE ALUMINUM BOLTS USED IN THE VARIOCAM ASSEMBLY. THE FAILURE OF BOTH BRAKES AND STEERING THAT OCCURS WHEN THESE BOLTS FAIL IS AN OBVIOUS SAFETY ISSUE WITH THESE VEHICLES. IT MAKES ME HESITANT TO DRIVE THE VEHICLE. I'VE ASKED THE LOCAL DEALER ABOUT IT, AND THEY CLAIM MY VEHICLE IS NOT EFFECTED.

    e.  *Vehicle:* 2011 Porsche Cayenne S
*Date Complaint Filed:* 02/04/2017
*Date of Incident:* 11/01/2016
*Component(s):* Engine
*NHTSA ID Number:* 10949610

-14-

*Consumer Location:* San Francisco, CA
*Vehicle Identification No. (VIN) (if known):* WP1AB2A23BL….
*Summary:* THE CAMSHAFT ACTUATOR BOLTS BREAK AND CAUSING INTERNAL DAMAGE TO THE ENGINE, THE VEHICLE LOSE POWER SUDDENLY AND DIFFICULT TO ENGAGE THE BRAKE PEDAL.

f.   *Vehicle:* 2011 Porsche Cayenne S
*Date Complaint Filed:* 02/02/2017
*Date of Incident:* 11/09/2016
*Component(s):* Engine
*NHTSA ID Number:* 10949006
*Consumer Location:* Lexington, KY
*Vehicle Identification No. (VIN) (if known):* WP1AB2A27DL….
*Summary:* SNAPPED ALUMINUM CAMSHAFT SENSOR BOLT RESULTED IN TOTAL ENGINE FAILURE. THIS IS A KNOWN ISSUE BY PORSCHE AG HAS RESULTED IN AN AMENDMENT IN AN EXISTING SERVICE BULLETIN (WC-22) AND ALSO A RECALL OF OVER 14000 CAYENNES AND PANAMERAS IN CHINA.

g.   *Vehicle:* 2011 Porsche Cayenne S
*Date Complaint Filed:* 10/24/2016
*Date of Incident:* 10/23/2016
*Component(s):* Engine
*NHTSA ID Number:* 10918673
*Consumer Location:* Milford, CT
*Vehicle Identification No. (VIN) (if known):* WP1AB2A21BL….
*Summary:* FAULTY CAMSHAFT BOLTS IN EARLY V8'S OF THIS GENERATION (2011 MODELS) RESULTING IN LOSS OF ENGINE POWER, AND SOMETIMES BRAKES. VEHICLE BROKE DOWN IN THE MIDDLE OF A BUSY ROAD, LUCKILY WAS NOT AT HIGHWAY SPEED OR IT COULD HAVE BEEN VERY DANGEROUS.

h.   *Vehicle:* 2011 Porsche Cayenne S
*Date Complaint Filed:* 08/04/2015
*Date of Incident:* 08/02/2015
*Component(s):* Engine
*NHTSA ID Number:* 10746230
*Consumer Location:* Hillsborough, CA
*Vehicle Identification No. (VIN) (if known):* WP1AB2A27BL….
*Summary:* ON FREEWAY 65-70 MPH WHEN PSM FAILURE LIGHT CAME ON AND LOS OF POWER JUST MADE OFF FREE WITH CHUGGING AND TO A STOP . TOWED TO DEALER ON A SUNDAY 8/2/15 MONDAY CALL ALUMINUM BOLTS IN VALVE ADJUSTERS ? CAN DAMAGE OR DID THE ENGINE . NO RECALLS ON THEM AND IS A KNOWN PROBLEM .

i.   *Vehicle:* 2011 Porsche Cayenne Turbo
*Date Complaint Filed:* 05/30/2017
*Date of Incident:* 05/24/2017
*Component(s):* Engine
*NHTSA ID Number:* 10992355
*Consumer Location:* Shelton, CT
*Vehicle Identification No. (VIN) (if known):* WP1AC2A29BL….

-15-

*Summary:*  DRIVING ON HIGHWAY WHEN THE CAR
DRAMATICALLY LOST POWER AND STALLED, LUCKILY I WAS
CLOSE TO AN EXIT AND MANAGED TO GET OFF THE
HIGHWAY. HOWEVER THERE WAS AN 18 WHEELER BEHIND
ME THAT HAD TO BRAKE HARD TO AVOID HITTING ME. I GOT
TO THE BOTTOM OF THE EXIT RAMP AND THE CAR WAS
BARELY RUNNING. WAS ABLE TO GET IT BACK TO THE
DEALER (WHICH WAS ONLY 1/4 MILE AWAY) THE PROBLEM
WAS THE CAMSHAFT ADJUST BOLTS ON BANK #1 SHEARED.
THIS IS A KNOWN DEFECTIVE PART AND PROBLEM WITH ALL
PORSCHE V8 ENGINES FROM 2011-2012.

j.  *Vehicle:* 2011 Porsche Cayenne Turbo
*Date Complaint Filed:* 04/10/2017
*Date of Incident:* 03/31/2017
*Component(s):* Engine
*NHTSA ID Number:* 10971679
*Consumer Location:*  South El Monte, CA
*Vehicle Identification No. (VIN) (if known):* WP1AC2A29BL….
Summary:  PORSCHE HAS A KNOW DEFECT IN
THE CAMSHAFT ADJUSTER SCREW FAILURE PORSCHE AS
ALREADY LEAD A CAMPAIGN TO FIX THIS ISSUE IN OTHER
PARTS OF THE GLOBE AND THIS FAILURE CAUSED MY
VEHICLE TO HAVE CATASTROPHIC ENGINE FAILURE THAT
PORSCHE NOW WANTS $35,199.00 TO FIX/REPAIR.
REFERENCES:
HTTP://EUROPE.AUTONEWS.COM/ARTICLE/20150209/ANE/15020
9861/PORSCHE-WILL-RECALL-SOME-PANAMERA-CAYENNE-
MODELS-IN-CHINA-ON-CAMSHAFT
HTTPS://WWW.6SPEEDONLINE.COM/FORUMS/CAYENNE-
958/319690-SNAPPED-CAMSHAFT-ADJUSTER-BOLT-ENGINE-
BRAKE-HYDRAULICS-FAILURE.HTML

k.  *Vehicle:* 2011 Porsche Cayenne Turbo
*Date Complaint Filed:* 02/22/2017
*Date of Incident:* 02/21/2017
*Component(s):* Engine
*NHTSA ID Number:* 10956246
*Consumer Location:*  Hollywood, CA
*Vehicle Identification No. (VIN) (if known):* WP1AC2A21BL….
*Summary:*  LATE 2010 TO EARLY 2012 PORSCHE CAYENNE
VEHICLES WITH V8 ENGINES HAVE A MANUFACTURING
DEFECT WITH BOLTS THAT HOLD
THE CAMSHAFT ADJUSTERS. THE WEAK BOLTS IN QUESTION
ARE MADE OF ALUMINUM AND HAVE BEEN EXPERIENCING
FAILURES WHERE THEY SHEER OFF, CAUSING
CATASTROPHIC DAMAGE TO THE ENGINE. IF THIS FAILURE
OCCURS WHEN THE VEHICLE IS AT SPEED, A LOSS OF POWER
BRAKING AND STEERING WILL OCCUR AS A RESULT.
PORSCHE IS AWARE OF THE PROBLEM AND WAS FORCED TO
RECALL ALL THE AFFECTED VEHICLES IN CHINA BY THE
CHINESE GOVERNMENT, BUT HAS SO FAR AVOIDED
RECALLING THE AFFECTED VEHICLES IN THE US. THE
NECESSARY REPAIRS INVOLVE REPLACING THE DEFECTIVE
BOLTS WITH STEEL ONES. PORSCHE NO LONGER USES THE
DEFECTIVE BOLTS IN THEIR V8 ENGINES BUILT AFTER 2012. I

-16-

BELIEVE PORSCHE WILL NOT ADDRESS THIS DEFECT
PROPERLY IN US CARS UNLESS AN INVESTIGATION IS
LAUNCHED WITH THE POSSIBILITY OF A RECALL. REPAIR
COSTS PER VEHICLE ARE ESTIMATED AT $3500, COMPARED
TO $30,000 FOR THE COST OF A COMPLETE REPLACEMENT
ENGINE. THERE ARE NUMEROUS WEBSITES WITH USERS
EXPLAINING THE PROBLEM AND LIMITED REMEDIES. HERE
ARE JUST A COUPLE: https://www.6speedonline.com/forums/cayenne-
958/319690-snapped-camshaft-adjuster-bolt-engine-brake-hydraulics-
failure.html http://www.bestattorney.com/blog/porsche-camshaft-defect-
comes-to-light MY VEHICLE HAS THE DEFECTIVE BOLTS IN
QUESTION BUT PORSCHE HAS SAID THEY WILL NOT CORRECT
THE PROBLEM AND FEEL MY CAR IS NOT AT ISSUE. I FEEL IT
IS ONLY A MATTER OF TIME BEFORE MY ENGINE
EXPERIENCES THIS FAILURE. MY ONLY OPTIONS ARE TO
EITHER MAKE THE REPAIRS AT MY COST, HOPING TO ONE
DAY BE REIMBURSED, OR TO SELL THE VEHICLE. I AM
HOPING BY FILING THIS INCIDENT INFORMATION, PORSCHE
CAN BE PERSUADED TO CORRECT THEIR DEFECT IN THE
THOUSANDS OF VEHICLES SOLD IN THE US. THANK YOU.

l. *Vehicle:* 2011 Porsche Cayenne Turbo
*Date Complaint Filed:* 01/30/2017
*Date of Incident:* 01/17/2017
*Component(s):* Engine
*NHTSA ID Number:* 10948598
*Consumer Location:*  Chesterfield, MO
*Vehicle Identification No. (VIN) (if known):* WP1AC2A2XBL….
*Summary:* CAMSHAFT ADJUSTER BOLTS STARTING TO BECOME
LOOSE AND BACK OUT, WHICH IS A KNOWN
MANUFACTURING DEFECT ON THOSE CARS, CAN LEAD TO
SUDDEN UNPREDICTABLE LOSS OF STEERING AND BRAKING,
AND POTENTIALLY ACCIDENTS, ESPECIALLY WITH VERY
HEAVY AND VERY FAST CAR LIKE THIS ONE. DEALER
QUOTED $4000 TO FIX WITH NEW BOLTS AND ADJUSTERS.
ATTACHED ARE PICTURES TAKEN WITH A BORESCOPE FROM
MY ENGINE. I AM SCARED TO DRIVE IT. THIS SHOULD BE A
RECALL. OWNERS SHOULD NOT BE PAYING FOR THIS. ALSO
ATTACHED IS QUOTE FROM DEALER.

m. *Vehicle:* 2011 Porsche Cayenne Turbo
*Date Complaint Filed:* 11/16/016
*Date of Incident:* 11/12/2016
*Component(s):* Engine
*NHTSA ID Number:* 10926441
*Consumer Location:*  Asheville, NC
*Vehicle Identification No. (VIN) (if known):* WP1AC2A21BL….
*Summary:*  MAJOR ENGINE FAILURE -RELATED TO DEFECT
IDENTIFIED IN VOLUNTARY WORKSHOP CAMPAIGN WC-22-IN
THE ALUMINUM CAMSHAFT ADJUSTER BOLTS WHICH HAVE
A TENDENCY TO SHEER OFF, WHICH PREVENT
THE CAMSHAFTS FROM RUNNING. IF THIS OCCURS IN
THE CAMSHAFT THAT OPERATES THE VACUUM PUMP, THE
POWER BRAKING WILL ALSO FAIL, WHICH WILL RESULT IN
AN EXTREMELY DANGEROUS SITUATION ESPECIALLY IF THE
DRIVER DOES NOT HAVE THE STRENGTH TO BRAKE THE CAR

-17-

WITHOUT THE VACUUM POWDERED BRAKES. THE BOLTS THEMSELVES MAY ALSO DROP INTO THE ENGINE AND CAUSE THE ENGINE TO FAIL. IN MY CASE VEHICLE HAD DEALER ROUTINE SERVICE CHECK 3-4 DAYS EARLIER- EVERYTHING "PERFECT". ON DAY OF FAILURE STOPPED FOR GAS AND AFTER RESTART HEARD A NEW "TICKING" AND CHECK ENGINE LIGHT CAME ON. I CALLED DEALER WHO INSTRUCTED ME TO COME OVER. I DROVE ABOUT 3-4 MILES TO DEALER NEW PSM FAILURE AND ANOTHER I DID NOT GET WHEN CAR LOST POWER AND SEEMED TO BRAKE POORLY.. ROLLED INTO DEALER AND STILL THERE- ENGINE PULLED -- MAY BE COMPLETE LOSS. DEALER ACKNOWLEDGED TODAY THIS IS THE SAME ISSUE AS WC-22.

n.  *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 01/25/2017
*Date of Incident:* 01/25/2017
*Component(s):* Engine
*NHTSA ID Number:* 10947697
*Consumer Location:*  Mohave Valley, AZ
*Vehicle Identification No. (VIN) (if known):* WP0AA2A74BL….
*Summary:*  CAMSHAFT BOLTS FRACTURED. VEHICLE WAS STATIONARY AND WAS GETTING AN OIL CHANGE AT A PORSCHE MECHANIC. THIS COULD HAVE RESULTED IN FATALITIES AND FURTHER ENGINE DAMAGE HAD I BEEN DRIVING THE VEHICLE. THIS DEFECT WAS RECALLED ON THIS MODEL IN CHINA DUE TO IT BEING A SAFETY ISSUE. PORSCHE MUST BE HELD ACCOUNTABLE FOR THIS DEFECT IN THE US, AS IT IS AWARE OF THIS ISSUE. THIS IS CAN BE A DEVASTING HAZARD THAT CAN COST LIVES. IT MUST BE ATTENDED TO !!!!

o.  *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 08/08/2016
*Date of Incident:* 07/24/2016
*Component(s):* Electronic Stability Control, Engine, Power Train
*NHTSA ID Number:* 10894113
*Consumer Location:*  Houston, TX
*Vehicle Identification No. (VIN) (if known):* Not available.
*Summary:* THE CAM SHAFT ADJUSTER BOLTS WERE BROKEN AND ARE TEARING APART WITH IN THE ENGINE AND CAUSING THE CAR TO STOP AND NOT START BACK AGAIN, THIS IS ALSO GIVING THE CHECK ENGINE LIGHT, START STOP MODE DEACTIVATED, PSM FAILURE ERRORS, THERE IS A RECALL IN CHINA FROM PORSCHE ABOUT THE SAME ERRORS AND SAME YEAR MODELS.

p.  *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 12/07/2016
*Date of Incident:*  10/04/2016
*Component(s):* Engine
*NHTSA ID Number:* 10933749
*Consumer Location:*  Orlando, FL
*Vehicle Identification No. (VIN) (if known):* WP0AB2A78BL….
*Summary:*  THE ENGINE OF MY PORSCHE PANAMERA WENT INTO A TOTAL FAILURE BECAUSE OF FAULTY DESIGN/PARTS

-18-

BY THE MANUFACTURER (I.E. SCREWS BROKE INSIDE
THE CAMSHAFT/ BLOCK). AFTER DOING RESEARCH ONLINE,
THIS IS A VERY COMMON PROBLEM WITH PORSCHE
PANAMERA, EVEN THE SERVICE MANAGER AT THE
DEALERSHIP (PORSCHE OF ORLANDO) TOLD ME THIS. DUE TO
THIS ISSUE, THE CAR, WHILE MY SON WAS DRIVING,
ESSENTIALLY STOPPED WORKING AND QUICKLY
DECELERATED FROM 70 MPH TO A COMPLETE STOP IN A
MATTER OF SECONDS. LUCKILY, THE SEMI THAT WAS
BEHIND HIM MANAGED TO AVOID A COLLISION WHICH, IF
SUCH A COLLISION WERE TO HAPPEN, COULD HAVE EASILY
KILLED MY SON. PORSCHE ACKNOWLEDGES THAT THIS
PROBLEM EXISTS AND A SIMPLE INTERNET SEARCH WILL
DISPLAY MULTIPLE COMPLAINTS OF IDENTICAL PROBLEMS
WITH THIS VEHICLE'S ENGINE BUT PORSCHE IS NEGLIGENT
BY REFUSING TO ISSUE A RECALL ON THE VEHICLES
SUSCEPTIBLE TO THIS PROBLEM. NOT ONLY IS THIS A
HAZARD, PORSCHE REFUSES TO ISSUE REPARATIONS TO
OWNERS AFFECTED BY THIS PROBLEM LEAVING PEOPLE
LIKE ME OUT OF WARRANTY AND A CAR AS THE ONLY
SOLUTION IS A COMPLETE ENGINE REPLACEMENT WHICH
COST MORE THAN THE CAR IS WORTH. EVEN IN OTHER
COUNTRIES, NAMELY CHINA, RECALLS HAVE BEEN ISSUED
FOR THIS VERY PROBLEM, YET HERE IN THE U.S., THERE HAS
BEEN NOTHING. THIS SEEMS TO BE A COMMON ISSUE WITH
THIS COMPANY AS VW, THE PARENT COMPANY, WAS
RECENTLY SUED FOR LYING ON MECHANICAL STATISTICS
(I.E. EMISSION REPORTS). I AM HOPING THAT YOU WILL
ASSIST ME IN MAKING A COMPELLING CASE AND ASSURE
THAT PORSCHE ANSWERS FOR THEIR NEGLIGENCE AND
REFUSAL TO HELP ITS CUSTOMERS. *TR

q.   *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 04/04/2016
*Date of Incident:*  04/12/2016
*Component(s):* Engine
*NHTSA ID Number:* 10855432
*Consumer Location:*  Greenville, SC
*Vehicle Identification No. (VIN) (if known):* WP0AA2A71BL….
*Summary:*  TL* THE CONTACT OWNS A 2011 PORSCHE
PANAMERA. WHILE DRIVING 30 MPH, AN ABNORMAL NOISE
WAS HEARD, THE SPEED REDUCED, THE VEHICLE SHOOK
VIOLENTLY, AND THE ENGINE STALLED. THE FAILURE
OCCURRED ONCE. THE VEHICLE WAS TAKEN TO AN
INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED THAT
THE CAMSHAFT AND BOLTS FAILED AND NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE
FAILURE MILEAGE WAS APPROXIMATELY 41,000.

r.   *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 12/01/2015
*Date of Incident:*  11/01/2015
*Component(s):* Engine
*NHTSA ID Number:* 10807762
*Consumer Location:*  Unknown

-19-

*Vehicle Identification No. (VIN) (if known):* WP0AB2A74BL….
*Summary:* "TAKATA RECALL" CAMSHAFT ADJUSTER BOLT PIN BROKE OFF AND CAMSHAFT CAME A PART. INCIDENT HAPPENED ON FREEWAY. HAD THE CAR TOWED TO THE DEALERSHIP AND THEY TOOK A PART THE ENGINE AND FOUND A BUNCH OF METAL IN THE OIL PAN. THE ENTIRE ENGINE HAD TO BE REPLACED. THERE WAS A RECALL FOR THIS ISSUE ON CARS IMPORTED INTO CHINA BUT THAT DID NOT COVER MY CAR. PORSCHE KNEW ABOUT THIS PROBLEM BUT REFUSING TO FIXED. THE COST OF THE NEW ENGINE IS $25000. THE CARS SHOULD BE RECALLED IN UNITED STATES BY PORSCHE. ITS A COMMON PROBLEM WITH THIS VEHICLE WITH THOUSANDS OTHER COMPLAINTS FROM OTHER DRIVERS. MY WARRANTY EXPIRED ON NOVEMBER 1 2015 CAR BROKE DOWN NOVEMBER 3 2015.

s.   *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 10/08/2015
*Date of Incident:*  09/13/2015
*Component(s):* Engine, Power Train
*NHTSA ID Number:* 10780826
*Consumer Location:* Unknown
*Vehicle Identification No. (VIN) (if known):* WP0AA2A79BL….
*Summary:* TL* THE CONTACT OWNS A 2011 PORSCHE PANAMERA. WHILE DRIVING 35 -40 MPH, THE VEHICLE STALLED AND THE SPEED DROPPED TO 10 MPH. THE ENGINE POWER REDUCED WARNING LIGHT AND THE TRACTION CONTROL DISABLED WARNING LIGHT ILLUMINATED ON THE INSTRUMENT PANEL. THE VEHICLE WAS TOWED TO A LOCAL DEALER, WHO DIAGNOSED THAT THE CAM SHAFTADJUSTER DETACHED AND MAY HAVE CAUSED AN ENGINE BLOCK, RESULTING IN A LOSS OF ENGINE POWER. THE MANUFACTURER WAS NOTIFIED AND ADVISED THE CONTACT TO SEE A LOCAL DEALER. THE FAILURE MILEAGE WAS 46,000.

t.   *Vehicle:* 2011 Porsche Panamera
*Date Complaint Filed:* 08/21/2015
*Date of Incident:*  04/24/2015
*Component(s):* Engine
*NHTSA ID Number:* 10750386
*Consumer Location:* Annandale, VA
*Vehicle Identification No. (VIN) (if known):* WP0AB2A76BL….
*Summary:*  CAMSHAFT ADJUSTER BOLT PIN BROKE OFF AND CAMSHAFT CAME A PART. INCIDENT HAPPENED WHILE SITTING AT A TRAFFIC LIGHT. HAD THE CAR TOWED TO THE DEALERSHIP AND THEY TOOK A PART THE ENGINE AND FOUND A BUNCH OF METAL IN THE OIL PAN. THE ENTIRE ENGINE HAD TO BE REPLACED. THERE WAS A RECALL FOR THIS ISSUE ON CARS IMPORTED INTO CHINA BUT THAT DID NOT COVER MY CAR. HAD TO PAY FOR THE REPAIR OUT OF POCKET WITH SOME HELP FROM THE EXTENDED WARRANTY COMPANY.

u.   *Vehicle:* 2010 Porsche Panamera S
*Date Complaint Filed:* 03/22/2017

*Date of Incident:* 02/24/2017
*Component(s):* Engine, Power Train, Steering
*NHTSA ID Number:* 10967672
*Consumer Location:* Richmond, CA
*Vehicle Identification No. (VIN) (if known):* WP0AB2A7XAL….
*Summary:* ON FRIDAY FEBRUARY 24, 2017 A SMALL FAMILY OF 4 WAS TRAVELLING ALONG INTERSTATE 5 (SOUTH) IN NORTHERN CALIFORNIA AT 8:03PM CRUISING AT 65 MPH IN THE FAR LEFT PASSING LANE WHEN THE DRIVER FELT A HEAVY VIBRATION AND BEGAN TO LOSE COMPLETE POWER OF THE VEHICLE INCLUDING ALL STEERING, ENGINE, AND BRAKES. THE DASHBOARD DISPLAYED: "REDUCED ENGINE POWER", "CHECK ENGINE OIL PRESSURE" , "PSM FAILURE", "START/STOP DEACTIVATION" FOLLOWED BY "CHECK ENGINE"-WHICH BEGAN BLINKING LEADING TO COMPLETE SHUTDOWN OF ENGINE WHILE TRAVELING AT 45-50 MPH. WITHOUT ANY CONTROL OF THE VEHICLE IN THE SAME OCCURRENCE A LOUD SUCTION NOISE WAS COMING FROM THE ENGINE COMPARTMENT FOLLOWED BY A LOUD DEAFENING NOISE. UPON REVIEW OF THE MANUFACTURE AND CERTIFIED TECHNICIANS THE CAR WAS DIAGNOSED AND IT WAS DETERMINED THE CRANK SHAFT BOLT PULLEY WAS SHAKEN OFF THE CAR CAUSING A COMPLETE CATASTROPHIC ENGINE FAILURE RESULTING IN A COMPLETE ENGINE REBUILD. THE PROBLEM LIES IN THE ALUMINUM CAMSHAFT ADJUSTER BOLTS WHICH HAVE A TENDENCY TO SHEER OFF, WHICH PREVENT THE CAMSHAFTS FROM RUNNING. IF THIS OCCURS IN THE CAMSHAFT THAT OPERATES THE VACUUM PUMP, THE POWER BRAKING WILL ALSO FAIL, WHICH WILL RESULT IN AN EXTREMELY DANGEROUS SITUATION ESPECIALLY IF THE DRIVER DOES NOT HAVE THE STRENGTH TO BRAKE THE CAR WITHOUT THE VACUUM POWDERED BRAKES. THE BOLTS THEMSELVES MAY ALSO DROP INTO THE ENGINE AND CAUSE THE ENGINE TO FAIL. THIS LACK OF ATTENTION WILL EVENTUALLY LEAD TO FATALITIES IF THIS ISSUE IS NOT RESOLVED!!! PLEASE HELP!!!!

v.   *Vehicle:* 2010 Porsche Panamera S
*Date Complaint Filed:* 11/03/2016
*Date of Incident:* 10/27/2016
*Component(s):* Engine
*NHTSA ID Number:* 10923957
*Consumer Location:* Sacramento, CA
*Vehicle Identification No. (VIN) (if known):* WP0AB2A78AL….
*Summary:* MY ENGINE LIGHT CAME ON WHILE I WAS DRIVING SO I TOOK IT TO A MECHANIC AND HE TELLS ME IT'S THE CAMSHAFT ADJUSTER IS CAUSING THE PROBLEM. THIS SEEMS TO BE AN OCCURRENCE ON 2010-11 MODELS AND IS EMISSIONS RELATED BUT CAN CAUSE ENGINE STALL. *TR

w.   *Vehicle:* 2011 Porsche Panamera Turbo
*Date Complaint Filed:* 05/11/2015
*Date of Incident:* 03/22/2015
*Component(s):* Engine
*NHTSA ID Number:* 10923957

-21-

*Consumer Location:* Saddle Brook, NJ
*Vehicle Identification No. (VIN) (if known):* WP0AB2A78AL….
*Summary:* MY 2011 PORSCHE PANAMERA TURBO SUFFERED AN ENGINE FAILURE DUE TO DESIGN FLAW. IT WAS FORTUNATE THAT I WAS NOT MOVING FAST AT THE TIME, BECAUSE ENGINE POWER AND HYDRAULIC BRAKE ASSIST WAS LOST. IF THIS HAD HAPPENED AT HIGHWAY SPEEDS IT COULD EASILY HAVE CAUSED A FATAL ACCIDENT. THE ENGINE FAILURE WAS DUE TO FAULTY CAMSHAFTADJUSTER BOLTS WHICH BACK-OUT AND GET SHEARED OFF BY ANOTHER MOVING PART, AND THE DEBRIS CAUSE CATASTROPHIC ENGINE DAMAGE. THIS HAS BEEN KNOWN TO PORSCHE FOR YEARS AND THEY HAVE RECALLED THE CAR FOR THIS PROBLEM IN CHINA ONLY! THE LINK BELOW TO REUTERS SHOWS THAT PORSCHE HAS RECALLED 14,571 CARS IN CHINA FOR THIS DEFECT, BUT NONE IN THE US OR EUROPE WHICH ARE AFFECTED BY THE SAME ISSUE. PORSCHE NA PERFORMED AN ENGINE REPLACEMENT AT A DISCOUNTED PRICE FOR ME ON THE CONDITION THAT I WOULD NOT SPEAK TO THE MEDIA ABOUT IT. THIS SHOULD BE LOOKED INTO CLOSELY AS THEY ARE TAKING ADVANTAGE OF THE LOW VOLUME OF SALES OF THIS ENGINE AND TRYING TO SWEEP IT UNDER THE RUG. THIS COULD RESULT IN A DANGEROUS ACCIDENT AND IT IS IN FACT MORE LIKELY TO OCCUR AT HIGH RPM AND SPEED THAN LOW SPEED. HTTP://UK.REUTERS.COM/ARTICLE/2015/02/07/UK-PORSCHE-CHINA-RECALL-IDUKKBN0LB0K920150207. *TR

x.   *Vehicle:* 2010 Porsche Panamera Turbo
*Date Complaint Filed:* 06/14/2017
*Date of Incident:* 06/03/2017
*Component(s):* Engine
*NHTSA ID Number:* 10995234
*Consumer Location:* DeWitt, MI
*Vehicle Identification No. (VIN) (if known):* WP0AC2A74AL….
*Summary:* TL* THE CONTACT OWNS A 2010 PORSCHE PANAMERA TURBO. WHILE DRIVING 70 MPH AND ATTEMPTING TO PASS A VEHICLE, THE CHECK ENGINE AND ALL WHEEL DRIVE SYSTEM INDICATORS ILLUMINATED. THE REAR OF THE VEHICLE BEGAN TO SWERVE INDEPENDENTLY. THE CONTACT PULLED OVER AND WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO OKEMOS AUTO COLLECTION (2186 JOLLY RD, OKEMOS, MI 48864) WHERE IT WAS DIAGNOSED THAT THE ENGINE EXPERIENCED A LOWER END FAILURE, AS EVIDENCED BY THE ENGINE OIL AND COOLANT MIXING. THE ENGINE NEEDED TO BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND STATED THAT THE CONTACT SHOULD PAY FOR THE DEALER TO DISASSEMBLE THE ENGINE TO DETERMINE IF IT WAS AN INTERNAL FAILURE, AND PORSCHE WOULD ASSIST, IF NECESSARY. THE DEALER ALSO STATED THAT A CAM SHAFT REPAIR WAS PREVIOUSLY PERFORMED ON THE VEHICLE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V368000 (ENGINE). THE APPROXIMATE FAILURE MILEAGE WAS 36,000.

-22-

y. *Vehicle:* 2010 Porsche Panamera Turbo
*Date Complaint Filed:* 05/18/2017
*Date of Incident:*  05/09/2017
*Component(s):* Engine
*NHTSA ID Number:* 10986397
*Consumer Location:*  Decatur, AL
*Vehicle Identification No. (VIN) (if known):* WP0AC2A75AL….
*Summary:*   MY 2010 PORSCHE PANAMERA TURBO (HAS ONLY
68,700 MILES ON IT) WAS ACCELERATING FROM A RED LIGHT
ON A BUSY CITY STREET GOING STRAIGHT. AS I
APPROACHED 50 MPH THE CHECK ENGINE LIGHT CAME ON
WITH A MESSAGE THAT SAID "4WD SYSTEM FAILURE AND
AUTO STOP/START FUNCTION DISABLED". SO, I HAD IT
TOWED TO THE PORSCHE DEALER FOR SERVICE. THEY
FOUND THE CAM ADJUSTER BOLTS ON ONE BANK HAD
SHEARED OFF AND THE CAM ADJUSTER ON THE OTHER BANK
HAD LOOSENED UP. THEN A SIMPLE INTERNET WEB SEARCH
REVEALED THAT THIS IS A PROBLEM WELL KNOWN WORLD
WIDE BY PORSCHE BUT ONLY CHINA FORCED A RECALL DUE
TO SAFETY. SO THERE'S ALREADY A PRECEDENT FOR A
RECALL ON THIS ISSUE. DEFECTIVE OR SUBSTANDARD CAM
ADJUSTER BOLTS DESTROYS THE UNIT ITSELF THEN FALL
OFF INTO THE ENGINE AND DESTROY THE ENGINE. YOU
CAN'T JUST REPLACE THE BOLTS. PORSCHE DOES NOT SALE
THE BOLTS SEPERATE BECAUSE THE BOLTS ARE APART OF
THE UNIT ITSELF. THE BOLTS ARE MADE
OF ALUMINUM WHICH IS BOTH A MAJOR DESIGN FLAW AND
THE CAUSE OF THE FAILURE. THEY LATER UPDATED THE
UNIT WITH TITANIUM BOLTS. HOWEVER, THIS IS ONLY A RED
HERRING AND DOES NOTHING TO ADDRESS THE 1000'S OF
PORSCHE OWNERS IN AMERICA THAT'S ALREADY SUFFERED
AN ENGINE FAILURE AND SHOULD BE REIMBURSED AND IT
DOES NOTHING TO PREVENT CATASTROPHE FOR THOSE
WHOSE ENGINE WILL EVENTUALLY FAIL. THIS BANDAID
ALSO DOES NOTHING TO ADDRESS ALL ENGINES MADE
BEFORE THE 2013 UPDATE THAT'LL LIKELY SELF DESTRUCT
AND LEAD TO COMPLETE ENGINE FAILURE WHICH CAN
LOCK-UP THE MOTOR AND CAUSE SERIOUS INJURY OR
DEATH AT HIGHWAY SPEEDS OR IN TRAFFIC. THE US
GOVERNMENT SHOULD FORCE PORSCHE TO RECALL THESE
ENGINES JUST LIKE CHINA DID AND HOLD PORSCHE
ACCOUNTABLE TO REPLACE ALL THE DEFECTIVE CAM
ADJUSTERS AND THE ONES THAT HAS ALREADY FAILED
SHOULD HAVE ENGINE REPLACED IF IT'S SO BAD THEY CAN'T
EVEN FIND THE BOLTS. PORSCHE SHOULD BE ASHAMED. IF
RECALLED PORSCHE COULD OWE SOME PEOPLE BETWEEN
$4K TO $45K.

## VI.   CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure,

Rule 23(a), (b)(2), and (b)(3) on behalf of the following class:

-23-

**The Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

63.     Alternatively, Plaintiff proposes the following state-specific sub-class:

**The California Class**

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

64.     Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities who purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition.

65.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

66.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rules of Civil Procedure, Rule 23.

67.     **Numerosity of the Class (Federal Rules of Civil Procedure, Rule 23(a)(1)):**   The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that there are hundreds to thousands of purchasers in the Class. Inasmuch as the Class members may be identified through business records regularly maintained by Defendant and its employees, agents and dealers, and through the media, the number and identities of Class members can be ascertained. Members of the Class can readily be notified of the pending action by e-mail, regular mail, and supplemented by published notice, if necessary.

68.     **Commonality and Predominance (Federal Rules of Civil Procedure, Rule 23(a)(2)**: There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual issues include, but are not limited to:

      a.   Whether Defendant engaged in the conduct alleged herein;

-24-

b. Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c. Whether Defendant designed, manufactured, marketed, distributed, leased, sold or otherwise placed Class Vehicles into the stream of commerce in the United States knowing that the Class Vehicles suffered from the Camshaft Defect;

d. When did Defendant first learn of the existence of the Camshaft Defect in the Class Vehicles;

e. Whether the Camshaft Defect constitutes a safety issue;

f. Whether Defendant intentionally concealed from consumers that the Class Vehicles suffered from the Camshaft Defect;

g. Whether breached the express terms of its contracts with purchasers and lessees when it marketed and sold Class Vehicles containing the Camshaft Defect;

h. Whether Plaintiff and the other Class members have been harmed by the fraud alleged herein;

i. Whether Defendant was unjustly enriched by its deceptive practices; and

j. Whether Plaintiff and members of the class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

69. **Typicality (Federal Rules of Civil Procedure, Rule 23(a)(3))**: The claims of the Plaintiff are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's conduct as alleged herein. The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

70. **Adequacy (Federal Rules of Civil Procedure, Rule 23(a)(4))**:   The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

71. **Superiority (Federal Rules of Civil Procedure, Rule 23(b)(3))**: This suit may be maintained as a class action under Federal Rules of Civil Procedure, Rule 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication

-25-

of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

72.     Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## VII.   VIOLATIONS ALLEGED

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

73.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

74.     Plaintiff brings this claim on behalf of himself and on behalf of the members of the Class against Defendant.

75.     Defendant is a "person" as that term is defined in California Civil Code § 1761(c).

76.     Plaintiff and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

-26-

77.     Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

78.     Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

79.     Since at least 2012, Defendant knew that the Class Vehicles and their camshaft adjuster bolts were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

80.     Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Vehicles and the defective nature of the Camshaft Defect because:

> a.     Defendant was in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their engines;

> b.     Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and their engine had dangerous safety defect until manifestation of the defect;

c.      Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect; and

d.      Defendant actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiff and Class members that the cause of their engine problems was due to Plaintiff's and the Class members' failure to properly maintain their vehicles despite knowing the repairs needed to correct the defect.

81.     In failing to disclose the Camshaft Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

82.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Class Vehicles and their Defective Camshafts, they would not have purchased the Class Vehicles or would have paid less for them.

83.     As a result of the California Civil Code § 1770 violations described above, Plaintiff and each and every member of the Class have suffered actual damages.

84.     Plaintiff has provided Porsche with sufficient notice of its violations of the CLRA, pursuant to California Civil Code § 1782(a).

85.     Plaintiff Swank's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

86.     Therefore, Plaintiff Swank and the other Class members seek all relief available under the CLRA, including attorneys' fees and costs, as provided in Civil Code section 1780.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAWS (Cal. Bus. & Prof. Code § 17200)**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

87.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this claim on behalf of himself and on behalf of the members of the Class against Defendant.

89.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

90.     Defendant has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to the defect.

91.     The defective camshaft adjuster bolts constitute a safety issue that triggered Defendant's duty to disclose the safety issue to consumers.

92.     These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff and the Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and the Class members, as it would have been to all reasonable consumers.

93.     The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

94.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

95.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

96.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

97.     Plaintiff brings this claim on behalf of themselves and on behalf of the members of the Class against Defendant.

98.     California Business & Professions Code § 17500 provides:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

99.     Defendant caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

100.     Defendant has violated California Business & Professions Code § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

101.     Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the safety and reliability of the Class Vehicles. Defendant's representations were untrue because the Class Vehicles are distributed with defective camshaft adjuster bolts. Had Plaintiff and the other Class members known this fact, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

102.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

103.     Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

104.     Plaintiff incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

105.     Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

-31-

106. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the ordinary purpose for which the Class Vehicles were purchased.

107. Defendant provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their engines suffered from the Camshaft Defect at the time of sale that causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

108. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines and related components would be fit for their intended use while the Class Vehicles were being operated.

109. Contrary to the applicable implied warranties, the Class Vehicles and their engines and related components at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation.

110. Plaintiff and Class members are intended third-party beneficiaries of contracts, including express warranties, between Defendant and its authorized dealerships, representatives, and agents. On information and belief, Defendant's authorized dealerships, representatives, and agents purchased Class Vehicles from Defendants pursuant to valid and enforceable agreements. Because Plaintiff and Class members—rather than Defendants' authorized dealerships, representatives, and agents—were the intended end users of Class Vehicles, Plaintiff and Class members were the intended (and not incidental) third party beneficiaries of the agreements entered into among Defendant and its authorized dealerships, representatives, and agents, and any warranties, express or implied, flowing therefrom.

Indeed, Defendant's authorized dealerships, representatives, and agents did not and would not purchase Class Vehicles for personal use, therefore the implied warranties flowing to them actually are intended to protect their customers from the losses the Class Vehicles have and will continue to cause them. Accordingly, Defendants are estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

111.    Defendant's actions, as alleged herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for ordinary use.

## FIFTH CAUSE OF ACTION

### BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15. U.S.C. § 2301, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

112.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

113.    Plaintiff brings this action on behalf of himself and on behalf of the Class against Defendant.

114.    Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

115.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

116.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

117.    Defendant provided Plaintiff and the Nationwide and/or California Class with one or more express warranties which are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

118.    Defendant breached the express warranties by:

a.    Providing a New Vehicle Limited Warranty for 4 years or 50,000 miles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.    Selling and leasing Class Vehicles with camshaft adjuster bolts that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

-33-

1      c.    Refusing and/or failing to honor the express warranties by repairing or replacing,

2             free of charge, the engine or any of its component parts in order to remedy the

3             Camshaft Defect.

4      119.   Plaintiff and the other Class members relied on the existence and length of the express

5  warranties in deciding whether to purchase or lease the Class Vehicles.

6      120.   Defendant's breach of the express warranties has deprived the Plaintiff and the other

7  Class members of the benefit of their bargain.

8      121.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or

9  value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000

10 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

11     122.   Defendant has been afforded a reasonable opportunity to cure its breach of written

12 warranties and/or Plaintiff and the other Class members were not required to do so because affording

13 Defendant a reasonable opportunity to cure its breach of written warranties would have been futile.

14 Defendant was also on notice of the alleged defect from the complaints and service requests it received

15 from Class members, as well as from its own warranty claims, customer complaint data, and/or parts

16 sales data.

17     123.   As a direct and proximate cause of Defendant's breach of the written warranties,

18 Plaintiff and the other Class members sustained damages and other losses in an amount to be

19 determined at trial. Defendant conduct damaged Plaintiff and the other Class members, who are entitled

20 to recover actual damages, consequential damages, specific performance, diminution in value, costs,

21 including statutory attorney fees and/or other relief as deemed appropriate.

22                            **SIXTH CAUSE OF ACTION**

23                            **COMMON LAW FRAUD**

24      **(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

25     124.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though

26 fully set forth herein.

27     125.    Plaintiff brings this action on behalf of themselves and on behalf of the Class against

28 Defendant.

-34-

126.    Defendant intentionally or negligently failed to disclose material facts to Plaintiff and the Class. In particular, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent Camshaft Defect as described herein.

127.    The existence of the defect was known only to Defendant due to its exclusive and superior knowledge regarding the design, materials and manufacture of the Class Vehicles' engines. As such, Plaintiff and the Class did not and could not have discovered the existence of the defect at the time they purchased or leased their vehicles, a defect which was not readily discoverable until it manifested after purchase or lease, often after the New Vehicle Limited Warranty has expired. Thus, Defendant either knew or should have known that its representations to the Class regarding the Class Vehicles were deceptively incomplete by omitting any reference to the Camshaft Defect.

128.    Defendant intended for Plaintiff and the Class members to rely on the absence of this material information in choosing to purchase or lease a Class Vehicle at the price they were offered for sale or lease. Plaintiff and the other Class members did, in fact, reasonably rely on the omission of this material information in choosing to purchase or lease a Class Vehicle at the price they were offered for sale or lease. Had Plaintiff and the Class members known about the Camshaft Defect, they would not have purchased or leased the Class Vehicles, or would have done so at a lower price.

129.    As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the Camshaft Defect and all of the resultant problems therewith, and have suffered damages as a result.

## SEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

130.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.    Plaintiff brings this action on behalf of himself and on behalf of the Class against Defendant.

132.    Plaintiff and the Class conferred a benefit on Defendant by purchasing or leasing the Class Vehicles.

Class Action Complaint
Case No.:

133.   Because of its wrongful acts and omissions, Defendant charged a higher price for the Class Vehicles than the Class Vehicles' true value and Defendant obtained money which rightfully belongs to Plaintiff and the members of the Class.

134.   Defendant had knowledge that this benefit was conferred upon them.

135.   Defendant has been unjustly enriched at the expense of Plaintiff and their retention of this benefit under the circumstances would be inequitable.

136.   Plaintiff, therefore, seeks an order requiring Defendant to make restitution to him and the other members of the Class.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.   For an order certifying this action as a class action;

B.   For an order appointing Plaintiff as representative of the Class and their counsel of record as Class counsel;

C.   For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages on claims for fraud and breach of contract and in an amount to be proven at trial, including but not limited to: (a) reimbursement for all expenses already incurred by Plaintiff or Class members because of the defective camshaft fasteners, including repairs, diagnostics, diminution in value, and consequential costs (towing charges, vehicle rentals, etc.); (b) free repairs that eliminate the camshaft fastener defect in Class Vehicles; and provision of a warranty of 10 years/100,000 miles for the Class Vehicles related to the camshaft fastener defect identified above.

D.   For an award of exemplary and punitive damages in an amount to be proven at trial;

E.   For an order enjoining the wrongful conduct alleged herein;

F.   For costs;

G.   For pre-judgment and post-judgment interest on such monetary relief; interest;

//

//

//

H.      For an award reasonable attorneys' fees and costs; and

I.      For such other relief as the Court deems just and proper.

DATED:  September 8, 2017.

McCune Wright Arevalo, LLP

BY:     */s/ David C. Wright*
        Richard D. McCune
        David C. Wright
        McCune Wright Arevalo LLP
        3281 Guasti Road, Suite 100
        Ontario, California 91761
        Telephone: (909) 557-1250
        Facsimile: (909) 557-1275
        Email: rdm@mccunewright.com
        dcw@mccunewright.com

        Joseph G. Sauder
        Matthew D. Schelkopf*
        Joseph B. Kenney
        McCune Wright Arevalo LLP
        555 Lancaster Avenue
        Berwyn, Pennsylvania 19312
        Telephone: (909) 557-1250
        Email: jgs@mccunewright.com
        mds@mccunewright.com
        jbk@mccunewright.com

        Matthew R. Mendelsohn*
        Adam M. Epstein
        Mazie Slater Katz & Freeman, LLC
        103 Eisenhower Parkway
        Roseland, NJ 07922
        (973) 228-9898
        Fax: (973) 328-0303
        mmendelsohn@mskf.net
        aepstein@mskf.net

        *Attorneys for Plaintiff and Putative Class*

        *Pro Hac Vice Applications to be submitted*

### JURY DEMAND

Plaintiff, on behalf of themselves and the putative Class, demands a trial by jury on all issues so triable.

McCUNE WRIGHT AREVALO, LLP

By: */s/ David C. Wright*
        Richard D. McCune
        Attorneys for Plaintiff and Putative Class

-37-